141 Nev., Advance Opinion 36

IN THE SUPREME COURT OF THE STATE OF NEVADA

ADAM SULLIVAN, P.E., IN HIS CAPACITY AS STATE ENGINEER; AND DIVISION OF WATER RESOURCES, DEPARTMENT OF CONSERVATION AND NATURAL RESOURCES, AN AGENCY OF THE STATE OF NEVADA,
Appellants,
vs.
BAKER RANCHES, INC., A NEVADA CORPORATION,
Respondent.

No. 86783



FILED

AUG 14 2025

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order granting a petition for judicial review in a proceeding related to water rights. Seventh Judicial District Court, White Pine County; Steve L. Dobrescu, Judge.

*Vacated.*

Aaron D. Ford, Attorney General, and James N. Bolotin, Senior Deputy Attorney General, Carson City,
for Appellants.

Leonard Law, PC, and Debbie Leonard, Reno,
for Respondent.

BEFORE THE SUPREME COURT, EN BANC.

*OPINION*

By the Court, STIGLICH, J.:

A holder of decreed water rights asked the State Engineer to investigate an alleged violation of its water rights. Although the State

25- 35585

Engineer initially investigated the allegations, he later suspended the investigation before reaching any official resolution, based on pending related federal litigation. Upon a petition for judicial review of the suspension, the district court ruled that the State Engineer arbitrarily and capriciously held the investigation in abeyance and remanded the matter with instructions that the State Engineer complete the investigation. In this appeal from the district court's order, we consider whether the State Engineer is empowered to hold in abeyance an investigation into an alleged violation of water rights. We further consider whether the State Engineer's decision to do so is subject to judicial review.

We conclude that the Legislature provided the State Engineer with several discretionary powers to exercise in protecting water rights and that these express powers encompass an implied power to hold an investigation in abeyance. We further conclude that the decision to suspend investigation into an alleged violation pending the resolution of related federal litigation is an interlocutory action that does not constitute a final decision suitable for judicial review. We therefore vacate the judgment of the district court.

*FACTS AND PROCEDURAL HISTORY*

Respondent Baker Ranches, Inc., holds water rights in the Baker and Lehman Creeks under the 1934 Baker-Lehman Decree. The Baker and Lehman Creeks arise in and flow through what is now Great Basin National Park before converging and flowing to Baker Ranches' point of diversion. In 2015, the National Park Service (NPS) was issued a permit for a nonconsumptive instream flow in Baker Creek for wildlife purposes; under the permit, the water may be used but not removed, and the entire natural flow must exit the park boundary undiverted. In 2018, Baker Ranches initiated federal litigation against the NPS, seeking a right-of-way

easement over NPS land, permanent access for operation and maintenance of the Snake Creek pipeline, and a declaratory judgment concerning its right to appropriate water from Baker Creek.

In 2019, while the federal litigation was ongoing, Baker Ranches asked appellants, the Division of Water Resources of the Nevada Department of Conservation and Natural Resources and its administrator, State Engineer Adam Sullivan (collectively, the State Engineer), to investigate an alleged violation of its rights under the permit by the NPS. In its request, Baker Ranches alleged that, historically, it managed and controlled the flow of Baker Creek across the park to ensure the full amount of water reached its point of diversion. In doing so, Baker Ranches would move rocks and debris in the creek channel to keep water away from nearby caves. Baker Ranches alleged the NPS was now denying it permission to remove such obstructions. Further, Baker Ranches alleged that since 2016, the NPS allowed unknown persons to construct rock dams in the creek channel, which obstructed the flow of water and diverted water into the caves. It alleged the water being diverted into the caves did not return to Baker Creek and therefore water from the creek was being consumed within the park, violating the terms of the permit and interfering with its water rights.

In response, the State Engineer visited the park site in June 2019, identifying one diversion where creek water entered a cave and was not conveyed back to the creek channel but determining that another visit, when the creek's water levels had receded, was necessary for further investigation. In October 2019, the State Engineer conducted a second visit and noted that the previously identified diversion had ceased and that no rock dams were observed. The State Engineer also noted log jams in several locations that could impede and redirect water flow and identified a

different area where water flowed from the creek into a cave. The State Engineer corresponded with the NPS and Baker Ranches about these issues for the next year and a half, roughly. In 2021, the State Engineer issued a letter explaining that he was holding the investigation in abeyance until related federal litigation concluded.[1]

Baker Ranches petitioned the state district court for judicial review or a writ of mandamus. The State Engineer moved to dismiss for lack of subject matter jurisdiction on the basis that his decision to hold the investigation in abeyance was not an appealable final decision. The district court denied the petition insofar as it sought a writ of mandamus but determined that judicial review was available, concluding that finality was not required and, even if finality were required, the State Engineer's decision was final. The district court concluded that the State Engineer's decision was arbitrary and capricious because the State Engineer lacked discretion under the statutory scheme to hold the investigation in abeyance and because the record did not support suspending the administrative

---

[1]The pending federal matter, brought by Baker Ranches against the Department of the Interior, sought enforcement of the Decree against the federal government. *Baker Ranches, Inc. v. Haaland*, No. 3:21-cv-00150-GMN-CSD, 2022 WL 867267 (D. Nev. Mar. 22, 2022); *Baker Ranches, Inc. v. Haaland*, 2023 WL 6784357 (9th Cir. Oct. 13, 2023). The United States District Court for the District of Nevada held that the United States (here, the NPS) had sovereign immunity from suit by Baker Ranches under the circumstances. *Baker Ranches, Inc. v. Haaland*, No. 3:21-cv-00150-GMN-CSD, 2024 WL 3927263 (D. Nev. Aug. 23, 2024). The federal district court dismissed the case for lack of subject matter jurisdiction after determining the United States did not waive sovereign immunity. *Id.* at *4, *6. The court further concluded that the state courts lack jurisdiction over the matter and vacated any orders entered before the court's holding. *Id.* at *6-7. Baker Ranches' appeal of the decision is pending. *Baker Ranches, Inc. v. Haaland*, Docket No. 24-5713 (9th Cir. filed Sept. 19, 2024).

proceedings based on any ongoing federal litigation. The district court ordered the State Engineer to complete the investigation, render a final decision, and take appropriate action concerning the allegations. The State Engineer appeals.[2]

## DISCUSSION

The State Engineer asserts that he may hold in abeyance the investigation into the NPS's alleged violation. Moreover, the State Engineer asserts that his letter doing so did not constitute a final decision subject to judicial review, such that the district court did not have subject matter jurisdiction to review his decision. Thus, the State Engineer argues that the district court's order must be overturned.

*Whether the State Engineer has discretion to hold in abeyance an investigation into an alleged violation*

The State Engineer contends that Nevada's statutory and regulatory framework grants him discretion in deciding how to investigate alleged violations. The State Engineer argues that he was authorized to hold, and reasonably acted in holding, the investigation in abeyance until the federal litigation concluded. Baker Ranches counters that holding the investigation in abeyance violated the State Engineer's statutory duties to protect existing rights and administer the Decree.

"The Legislature has established a comprehensive statutory scheme regulating the procedures for acquiring, changing, and losing water rights in Nevada." *Sullivan v. Lincoln Cnty. Water Dist.*, 140 Nev., Adv. Op. 4, 542 P.3d 411, 420 (2024) (internal quotation marks omitted). Under this comprehensive scheme, the State Engineer has only those powers that the Legislature delegates to him, either expressly or implicitly. *Id.* The State

---

[2]Oral argument in this case took place before a three-member panel. The case was subsequently transferred to the en banc court.

Engineer's implicit powers to act lie where the act is needed to carry out an express duty. *Id.* Proceedings regarding water law are distinct and strictly limited to those parameters set forth by the Legislature. *Application of Filippini*, 66 Nev. 17, 27, 202 P.2d 535, 540 (1949). We review statutory interpretation de novo, *In re Nev. State Eng'r Ruling No. 5823*, 128 Nev. 232, 238, 277 P.3d 449, 453 (2012), and our review begins with the scope of the State Engineer's powers concerning investigating alleged violations of water rights and his discretion in exercising them.

The water statutes set forth several discretionary powers the State Engineer may exercise in redressing violations of water rights. For instance, the State Engineer "shall have power to arrest" and deliver to the custody of the sheriff a person who violates NRS Chapter 533. NRS 533.475. The statute conferring that authority does not *require* the State Engineer to arrest such a person; instead, whether to make an arrest lies within the State Engineer's discretion. *Cf. Heckler v. Chaney*, 470 U.S. 821, 832-33 (1985) (emphasizing that agency decisions not to take an enforcement action are presumptively unreviewable). Additionally, if a person violates the water statutes or the terms of a permit, the State Engineer may order the person to replace unlawfully wasted or diverted water or fine the person. NRS 533.481(1). And the State Engineer may also seek to redress violations by injunctive relief. NRS 533.482; *see also* NRS 534.195 (providing for injunctive recourse regarding underground water and wells); NRS 535.210 (same, regarding dams and other obstructions); NRS 536.210 (same, regarding ditches, canals, flumes, and other conduits). Although the statutory scheme thus necessarily implies the power to investigate violations of water rights or permit terms, the powers the Legislature conferred are discretionary in nature. *See* NRS 0.025(1) (directing that the use of "may" in a statute "confers a right, privilege or

SUPREME COURT
OF
NEVADA

(0) 1947A

power," while "shall" indicates "a duty to act"); *Nev. Comm'n on Ethics v. JMA/Lucchesi*, 110 Nev. 1, 9-10, 866 P.2d 297, 302 (1994) (recognizing that "[i]t is a well-settled principle of statutory construction that statutes using the word 'may' are generally directory and permissive in nature, while those that employ the term 'shall' are presumptively mandatory").

The Legislature empowered the State Engineer "to regulat[e] and control" water appropriations as well. NRS 533.430(1). The regulatory framework aligns with the statutory scheme, and the State Engineer has enacted several regulations pertaining to enforcement. When a violation of any water requirement is committed, the State Engineer may respond by issuing a warning letter identifying the alleged violation and requesting its remediation, initiating an enforcement action finding an alleged violation and ordering compliance with the applicable requirements, or seeking injunctive relief. NAC 532.200; *see also* NAC 532.150 (defining "violation"). The State Engineer has discretion whether to impose a fine, NAC 532.210(1), but the amount of the fine must reflect consideration of certain nondiscretionary factors, NAC 532.210(2), (4). Similarly, the State Engineer may order the replacement of wasted water, NAC 532.220(1), but "will consider" certain factors before doing so, NAC 532.220(2). The regulatory framework thus exhibits discretionary authority as well as mandatory considerations that must be reviewed in the exercise of that authority. No statute or regulation specifically directs the State Engineer to investigate an alleged violation.[3]

---

[3]Baker Ranches is mistaken in its view that NRS 533.085, 533.220, and 533.430 required the State Engineer to act. NRS 533.085 provides that nothing in NRS Chapter 533 shall impair a vested water right, NRS 533.220 provides that the State Engineer may petition a district court to enforce an administrative order determining distribution of water, and NRS 533.430

SUPREME COURT
OF
NEVADA

(0) 1947A

Here, the State Engineer was informed of an alleged violation and took steps to resolve the allegation by communicating with the interested parties and twice visiting the site. In the letter to Baker Ranches and the NPS, the State Engineer then notified them that the investigation into the alleged violation would be held in abeyance pending the related federal litigation. Just as a court has the inherent authority to manage its internal affairs, *City of Sparks v. Sparks Mun. Ct.*, 129 Nev. 348, 363, 302 P.3d 1118, 1129 (2013), the State Engineer has the implied authority to manage his activities in exercising the Legislature's charge to investigate alleged violations of water rights. The statutory and regulatory frameworks provide a discretionary procedure for the State Engineer to utilize to address alleged violations, and holding an investigation in abeyance pending related litigation was a permissible action in exercising the powers the Legislature conferred. *See generally Gen. Foods Corp. v. Cryo-Maid, Inc.*, 198 A.2d 681, 683 (Del. Ch. 1964) (observing that courts have the inherent power to stay proceedings pending similar actions between the same parties with the same issues in another forum), *overruled on other grounds by Pepsico, Inc. v. Pepsi-Cola Bottling Co. of Asbury Park*, 261 A.2d 520 (Del. 1969). We therefore conclude that the State Engineer acted within the authority granted in reserving decision on the alleged violation pending resolution of the related federal proceedings. *See J. P. Chatzel & Co. v. Bolton*, 14 S.C.L. (3 McCord) 33, 38 (1825) ("There can be no doubt that the pendency of a suit in another state, is no reason of itself for the delay of a cause in this; but when it is obvious to the court that their decision will

---

provides that water permits are subject to regulation and control by the State Engineer. Nothing in these statutes mandates that the State Engineer must investigate an alleged violation in a particular way or within a particular time frame.

affect rights to be ascertained by the determination of such suit, and where such rights are involved in the cause here, they will grant a reasonable time to the parties interested to obtain such determination.").

No statute or regulation provides that the State Engineer had to investigate the alleged violation in any particular way or within any time frame, and Baker Ranches has failed to identify any authority dictating a particular procedure or precluding the State Engineer from pausing the investigation. *See Wilson v. Pahrump Fair Water, LLC*, 137 Nev. 10, 16-17, 481 P.3d 853, 858 (2021) (concluding that the State Engineer need not conduct proceedings or produce a record beyond that which provides substantial record evidence to support the decision); *see also Gray Line Tours of S. Nev. v. Pub. Serv. Comm'n of Nev.*, 97 Nev. 200, 204, 626 P.2d 263, 266 (1981) (declining to require, on due process grounds, state administrative agencies to decide issues "within a reasonable time" where the appellant failed to show a requirement to do so). Further, the State Engineer's decision aligns with the statutory framework in that the Legislature has expressly permitted the State Engineer to postpone a decision in another context—that of an application to use water where pending litigation may affect the resolution of the application. NRS 533.370(4)(e); *cf.* NRS 533.370(4) (providing eight other bases upon which the State Engineer may postpone an action). Accordingly, the district court erred in finding the State Engineer lacked discretion to hold the investigation in abeyance pending resolution of the federal litigation.[4]

---

[4]By virtue of our conclusion that it is within the State Engineer's discretion to hold such an investigation in abeyance, we need not consider whether holding the investigation in abeyance pending the federal litigation here was improper.

SUPREME COURT
OF
NEVADA

(0) 1947A

*Whether the district court had subject matter jurisdiction to review the State Engineer's decision to hold the investigation in abeyance*

The State Engineer argues its determinations must be final to be subject to judicial review. Baker Ranches responds that any decision of the State Engineer is reviewable under statute and that it is aggrieved by the decision to pause the investigation because the pause affects its interests related to its water rights. Baker Ranches disputes that the statute requires finality but argues that, even if finality were required, the State Engineer's decision was a final decision not to carry out his duties.

NRS 533.450(1) provides that "any person feeling aggrieved by any order or decision of the State Engineer . . . affecting the person's interests, when the order or decision relates to the administration of determined rights or is made pursuant to NRS 533.270 to 533.445, inclusive," may seek judicial review. To be judicially reviewable, an order or decision must (1) "affect[ ] a person's interests," (2) be a final decision on the issue, and (3) be in writing. *Howell v. Ricci*, 124 Nev. 1222, 1228, 197 P.3d 1044, 1048 (2008). We reject Baker Ranches' contention that finality is not required as contrary to the plain guidance of *Howell*. For the purposes of appeal, whether a decision is final turns on what it does, rather than any label placed on it. *Valley Bank of Nev. v. Ginsburg*, 110 Nev. 440, 445, 874 P.2d 729, 733 (1994). Given that judicial review of a State Engineer decision is "in the nature of an appeal," NRS 533.450(1), we conclude similarly that a State Engineer decision is final where it too disposes of all the issues the matter presents and leaves nothing for the State Engineer to further consider in that regard, *see Valley Bank*, 110 Nev. at 445, 874 P.2d at 733.

In *Howell*, for instance, "the State Engineer communicated its refusal to open the headgates to [appellant's] property and amend . . . permits to exclude [appellant's] water rights" through a letter explaining that "NRS 533.386(4) prohibited it from taking further action until a court of competent jurisdiction resolved the conflicting claims of title ownership." 124 Nev. at 1227-28, 197 P.3d at 1048. The "decision affected the Howells' interest with respect to their rights to use the water." *Id.* at 1228, 197 P.3d at 1048. Although the communication was by letter, the decision it relayed was not tentative or interlocutory in nature and marked the consummation of the proceedings on the water rights matter before the State Engineer, making it final and reviewable. *See Peabody Sage Creek Mining, LLC v. Colo. Dep't of Pub. Health & Env't, Water Quality Control Div.*, 484 P.3d 730, 735 (Colo. App. 2020) (explaining that final agency action "mark[s] the consummation of the agency's decision-making process" and is not tentative or interlocutory).

As in *Howell*, we look to the substance of the State Engineer's action to determine whether it constituted a judicially reviewable final decision. Unlike in *Howell*, the letter here did not include a decision by the State Engineer that no further action could or would be taken because of a lack of authority to address the issue. Instead, the State Engineer announced that the investigation would not be completed until after the resolution of a collateral matter that would likely affect the parties interested in the investigation. The letter cited no law and announced only that the alleged violation investigation was being held in abeyance. The letter implied that the State Engineer will resolve the alleged violation after the related federal litigation concludes. Rather than disposing of the issues presented by the alleged violation, the State Engineer thus indicated his intent to resolve the issues in the future. As the State Engineer argues on

appeal, the purpose of the abeyance was to resolve the alleged violation consistently with the federal litigation; that is, to rely on the collateral proceedings when the State Engineer returns to resolve the alleged violation. The context thus makes evident the letter was not a final written decision on the matter and thus was not subject to judicial review. That it affected Baker Ranches' interests is not dispositive. The district court therefore erred in entertaining Baker Ranches' petition for judicial review.

We recognize, however, that a decision to hold a proceeding in abeyance might be reviewable if it stays the proceeding indefinitely or effectively dismisses the allegation. *See Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341 (Fed. Cir. 1983) ("A stay may be an appealable 'final' decision, and thus within the jurisdiction of an appellate court, when it effectively puts the parties out of the district court, either permanently because it terminates the action as a practical matter, or, as some courts have held, for a protracted or indefinite period."). We make no determination on the availability of judicial review of that type of an order here, as nothing suggests that such is at issue.

## *CONCLUSION*

Consistent with the statutory and regulatory schemes governing the State Engineer's protection of water rights throughout Nevada, we conclude that the State Engineer has discretion to hold an investigation into alleged violations in abeyance. Furthermore, such an action is interlocutory, not a final order or decision, and without more is not subject to judicial review. Accordingly, we vacate

the district court's order granting Baker Ranches' petition for judicial review.

_____, J.
Stiglich

We concur:

_____, C.J.
Herndon

_____, J.
Pickering

_____, J.
Parraguirre

_____, J.
Bell

_____, J.
Cadish

_____, J.
Lee

SUPREME COURT
OF
NEVADA

(O) 1947A